**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 30 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

————————————————

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

EDMUNDO CISNEROS-CRUZ,

    Defendant-Appellant.

No. 98-1398
(D. Colo.)
(D.Ct. No. 98-CR-44-M)

————————————————

**ORDER AND JUDGMENT**[*]

————————————————

Before **BALDOCK**, **BARRETT**, and **BRORBY**, Circuit Judges.

————————————————

    Defendant-Appellant Edmundo Cisneros-Cruz appeals the district court's decision denying in part his motion to suppress his statements and other evidence obtained following his arrest by Immigration and Naturalization Service agents. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

---

    [*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

FACTUAL BACKGROUND

In August 1996, Stephen Simer, a special agent with the United States Custom Service, participated in the surveillance and arrest of Mr. Cisneros-Cruz, a Mexican citizen, for possession of marijuana. Following his guilty plea, a Colorado district court sentenced Mr. Cisneros-Cruz to two years in the Colorado Department of Corrections. However, that court suspended his sentence on the special condition he be deported and not return illegally to the United States. Pursuant to an order of the Immigration and Naturalization Service, Mr. Cisneros-Cruz was deported to Mexico November 18, 1996.

In July 1997, Special Agent Simer saw Mr. Cisneros-Cruz on a street adjacent to a restaurant in Denver, Colorado. In January 1998, Special Agent Simer again saw Mr. Cisneros-Cruz in an alley behind the same restaurant. As part of another investigation involving the restaurant, Special Agent Simer learned Mr. Cisneros-Cruz frequented and possibly stayed overnight in the building. Based on that information and Mr. Cisneros-Cruz's known illegal reentry status, Ross E. Godwin, a special agent with the Immigration and Naturalization Service, obtained an administrative arrest warrant issued by the Immigration and Naturalization Service for the arrest of Mr. Cisneros-Cruz.

After obtaining the arrest warrant, Special Agents Godwin and Simer entered the restaurant for the purpose of arresting Mr. Cisneros-Cruz. Because they did not see him in the dining area, the agents proceeded to the rear of the building to check the restrooms. They first checked a room marked "restroom." They next checked an unmarked, adjacent room which, based on information from other sources, Special Agent Simer believed to be a handicapped restroom.[1] Prior to entry, the agents knocked on the door. On hearing a voice inside, they immediately entered the room and found Mr. Cisneros-Cruz rising from a makeshift bed. When they asked him to identify himself, he told them he was "Edwardo Fuentes" and provided a false green card. However, when asked if he was Edmundo Cisneros-Cruz, he answered affirmatively. The agents then handcuffed Mr. Cisneros-Cruz and escorted him to an adjacent room where he waited until the agents finished interviewing the restaurant manager. The manager confirmed Mr. Cisneros-Cruz stayed at the restaurant periodically and showed them a sleeping bag in his office where Mr. Cisneros-Cruz also slept.[2]

---

[1] This room was once used as a bathroom and contained a sink and vanity, but the toilet and shower had been removed. The manager testified he anticipated converting it to a handicapped bathroom in the future.

[2] Mr. Cisneros-Cruz testified he "lived"at the restaurant for approximately two months, staying there only at night. Besides blankets and a mattress, the only personal belongings Mr. Cisneros-Cruz had in the room included his boots, hat and trousers.

Following the interview with the manager, Special Agent Godwin assisted in transporting Mr. Cisneros-Cruz to the Immigration and Naturalization Service office. In route, Special Agent Godwin advised Mr. Cisneros-Cruz of his *Miranda* rights, which Mr. Cisneros-Cruz stated he understood. Special Agent Godwin then proceeded to question him about his deportation and reentry into the United States.

When they arrived at the Immigration and Naturalization Service office, Special Agent Godwin served Mr. Cisneros-Cruz with the arrest warrant and again advised him of his *Miranda* rights. Mr. Cisneros-Cruz waived his rights and indicated his willingness to talk. He later executed a sworn statement formally admitting facts relating to his alienage, criminal conviction and prior deportation. At that time, Immigration and Naturalization Service personnel also took his fingerprints.

## PROCEDURAL BACKGROUND

After his arrest, a federal grand jury indicted Mr. Cisneros-Cruz for unlawful reentry into the United States following his deportation for an aggravated felony. Following his arraignment, Mr. Cisneros-Cruz moved to suppress all evidence and statements regarding his identity and criminal history,

claiming his arrest violated the Fourth Amendment and that the government subjected him to a custodial interrogation without the benefit of a *Miranda* warning in violation of the Fifth and Sixth Amendments.

At the suppression hearing, Special Agents Simer and Godwin, the restaurant manager, and Mr. Cisneros-Cruz testified. Based on that testimony, the district court determined the agents unreasonably concluded the second unmarked room was a public restroom which they could access. The district court then issued an order granting Mr. Cisneros-Cruz's suppression motion in part, finding he had a reasonable expectation of privacy in the room where the agents found him and that the "warrantless" entry into the room violated his Fourth Amendment rights. The district court held that:

> the false identification card and any other items taken from the defendant at the time of his arrest, as well as his statements both before and after the *Miranda* warnings, must be suppressed as fruits of the unlawful entry, and that the defendant's fingerprints and any photographs made during the booking process must also be suppressed as tainted evidence.

However, the district court denied Mr. Cisneros-Cruz's request that the prosecution be precluded from proving his identity at trial.

Following the court's decision, the government filed a motion for reconsideration arguing Mr. Cisneros-Cruz's arrest did not violate the Fourth

-5-

Amendment because the agents obtained a valid administrative arrest warrant and actually believed the room they entered functioned as a public, handicapped restroom.  In addition, the government claimed that even if the agents violated the Fourth Amendment by entering the room, under *New York v. Harris*, 495 U.S. 14 (1990), the exclusionary rule could not apply to Mr. Cisneros-Cruz's statement and fingerprints obtained at the Immigration and Naturalization Service office and away from his room or "residence" because the agents had probable cause to arrest Mr. Cisneros-Cruz.  Mr. Cisneros-Cruz opposed the motion for reconsideration and, in addition, raised a new allegation that the agents violated his Fourth Amendment rights by failing to perform the constitutional and statutory "knock and announce" requirement before they entered the room.

At a hearing on the motion for reconsideration, the district court reaffirmed its decision that the initial arrest was illegal by:  (1) concluding illegal aliens such as Mr. Cisneros-Cruz must be afforded the same Fourth Amendment protections as citizens; (2) articulating its belief that an Immigration and Naturalization Service administrative arrest warrant is unlike a judicially issued arrest warrant and cannot be used for the purpose of criminal prosecution; (3) reaffirming its finding that the agents unreasonably believed they entered a public restroom and not a "residence"; and (4) finding the agents violated the "knock and announce"

requirement when they knocked, but failed to wait for a response before entering the room.

Having found the arrest illegal, the district court nevertheless partially granted the government's motion and modified its prior suppression order based on its review of *Harris*. Under its interpretation of that case, the district court determined an attenuation of the arrest violation occurred when agents gave Mr. Cisneros-Cruz the intervening *Miranda* warning between the time of his initial arrest at his "residence" and his statement given at the Immigration and Naturalization Service office. Based on this determination, the district court concluded the statements, identification and fingerprints made at the office could be used as evidence at trial. In anticipation of the government's use of this evidence at trial, Mr. Cisneros-Cruz pled guilty to unlawful reentry into the United States after deportation for an aggravated felony, but reserved the right to appeal the disposition of his suppression motion.

On appeal, Mr. Cisneros-Cruz contends the district court committed reversible error in first granting, and then denying, his motion to suppress his fingerprints and his statement. He claims that, under the "fruit of the poisonous tree" doctrine, his illegal arrest prohibits the introduction of any evidence derived

from that arrest. Mr. Cisneros-Cruz suggests his arrest was illegal because the agents involved: (1) did not secure a judicial arrest warrant authorizing entry into Mr. Cisneros-Cruz's private "residence"; (2) entered without announcing their authority and purpose, thereby violating the "knock and announce" requirement; (3) questioned him inside his "residence" without the benefit of a *Miranda* warning; (4) obtained an involuntary statement from him following the *Miranda* warnings; and (5) never advised him that his previous illegally obtained statements could not be used against him. Finally, Mr. Cisneros-Cruz argues the district court erred by not making an explicit determination as to the voluntariness of his pre- and post-*Miranda* statements.

## STANDARD OF REVIEW

A district court's ruling on a motion to suppress, based on live testimony at a suppression hearing, is accepted unless clearly erroneous or influenced by an incorrect view of the law. *United States v. Lin Lyn Trading, Ltd.*, 149 F.3d 1112, 1116 (10th Cir. 1998). We review questions of law *de novo,* viewing the evidence in the light most favorable to the party that prevailed in the district court. *Id.* Because Mr. Cisneros-Cruz is appealing the district court's order, we view the evidence in the light most favorable to the government.

-8-

DISCUSSION

For the purposes of this appeal, we assume without deciding that Mr. Cisneros-Cruz's arrest violated the Fourth Amendment as a warrantless and nonconsensual entry into a "residence."[3] Nevertheless, the evidence obtained after the unlawful arrest may still be admissible depending on whether the agents had probable cause to arrest Mr. Cisneros-Cruz. *See Harris*, 495 U.S. at 18. Under the principles articulated in *Harris*, if no probable cause existed, evidence obtained as a result of the illegal arrest may be suppressed under the exclusionary rule as "fruit of the poisonous tree." *Id*. at 18-19. However, if the agents had probable cause to arrest Mr. Cisneros-Cruz, the "fruit of the poisonous tree" doctrine does not apply. *Id.* at 21.

In *Harris*, the police made a nonconsensual and warrantless entry into the defendant's apartment for the sole purpose of taking him into custody. 495 U.S. at 1642. After the officers read Mr. Harris his *Miranda* rights, he responded to

---

[3] By making this assumption, we leave certain Fourth Amendment issues open for resolution at another time. Thus, we do not decide whether Fourth Amendment rights should be afforded to Mr. Cisneros-Cruz as an illegal alien; whether the Immigration and Naturalization Service's administrative warrant was sufficient to make an arrest for criminal prosecution, or whether the room in a public restaurant where Mr. Cisneros-Cruz slept can be considered his "residence" for the purpose of an arrest warrant or the "knock and announce" requirement.

their questions and admitted killing the victim in question. The police then arrested him and took him to the police station where he was again informed of his *Miranda* rights and signed a written inculpatory statement. *Id.* In determining the station house statement was admissible, the Supreme Court declined to apply the exclusionary rule, stating that while statements within the home are afforded substantial protection, the same protection does not apply to statements taken outside the home where the police have probable cause to arrest the suspect for committing a crime. 495 U.S. at 17-18. In reaching this conclusion, the Court explained that the police could have immediately rearrested Mr. Harris, even if momentarily released after the first arrest, because they possessed probable cause he committed the crime. *Id.* at 18. Hence, the Court dispensed with the formality of the police having to release and then rearrest a suspect when probable cause for the arrest existed, but police misconduct, such as a warrantless, nonconsensual arrest at a residence, occurred. In further support of its conclusion that the exclusionary bar could not apply, the Supreme Court reasoned that Mr. Harris' person or body, obtained at the initial arrest, was not suppressible as a fruit of an unlawful arrest. *Id.* at 18-19 (citing *United States v. Crews*, 445 U.S. 463, 475 (1980)). In other words, while the statement taken at the time of the police misconduct may have been suppressible, custody of Mr. Harris himself was not

-10-

"suppressible" because probable cause for his arrest existed.[4]

In this case, we find probable cause to arrest Mr. Cisneros-Cruz existed before the agents entered the restaurant because Special Agent Simer, who previously arrested Mr. Cisneros-Cruz on marijuana charges, recognized him on sight, positively identified him on at least two occasions outside the restaurant and knew of his prior aggravated felony conviction, deportation, and illegal reentry status. Moreover, the record plainly shows preexisting criminal conviction and deportation records positively confirmed his prior criminal conviction, deportation and illegal reentry status.

Having found probable cause existed in this case, for the same reasons articulated in *Harris* we conclude Mr. Cisneros-Cruz was in lawful custody when he was removed from the restaurant, taken to the Immigration and Naturalization Service office, and read his *Miranda* rights. Because Mr. Cisneros-Cruz was in lawful custody, his sworn statement is admissible, absent abuses such as coercion, lack of a *Miranda* warning, or lack of Mr. Cisneros-Cruz's understanding of his

---

[4] *Harris* does not turn on any act of attenuation between the unlawful entry and the formal statement, but on the existence of probable cause for Mr. Cisneros-Cruz's arrest and his lawful custody following his removal from his "residence." 495 U.S. at 18-19.

-11-

rights. *Id.* at 20 (citing *Edwards v. Arizona*, 451 U.S. 477, 482 (1981) (holding voluntariness of confession is contingent on the defendant's understanding of his right to counsel and intelligent and knowing relinquishment of that right)).

In this case, no such abuses occurred. Agents twice advised Mr. Cisneros-Cruz of his *Miranda* rights, which he subsequently waived before indicating his desire to make a formal statement. As for the voluntariness of his sworn statement, we note that while an explicit holding is preferred, it is evident the district court grappled with the issue and implicitly made a finding of its voluntariness when it determined Mr. Cisneros-Cruz's last inculpatory statement was admissible. Moreover, the government met its burden by showing Mr. Cisneros-Cruz voluntarily made that statement when it introduced Special Agents Simer's and Godwin's testimony concerning the circumstances surrounding his arrest and sworn statement. *See United States v. Gell-Iren*, 146 F.3d 827, 830 (10th Cir. 1998). Mr. Cisneros-Cruz failed to sufficiently rebut this evidence.[5]

---

[5] Mr. Cisneros-Cruz attempted to rebut the voluntariness of his statement by contending that while handcuffed and seated at the restaurant table, but prior to receiving his *Miranda* warning, Special Agent Godwin became angry and slammed his fist down on the table demanding he cooperate. However, Special Agents Godwin and Simer testified this did not occur. Mr. Cisneros-Cruz also claims that while at the restaurant, he told Special Agent Godwin he wanted to remain silent. However, Special Agent Godwin testified Mr. Cisneros-Cruz never made such a request and ultimately, after receiving the *Miranda* warning twice, Mr. Cisneros-Cruz waived his right to remain silent regardless of whether he initially made this request. We note that the district court heard the

Finally, nothing in the record shows his statement resulted from his lack of understanding as to his rights or failure to intelligently and knowingly waive those rights. Thus, we hold that because probable cause for Mr. Cisneros-Cruz's arrest existed and he was in lawful custody at the time agents took his statement and fingerprints, the district court did not err in relying on *Harris* when it determined the government could properly introduce that evidence at trial.

Mr. Cisneros-Cruz also argues that the agents should have advised him that his statement taken at the restaurant could not be used against him. We disagree. His statement that he was "Edmundo Cisneros-Cruz," which agents obtained prior to handcuffing him and reading him his *Miranda* rights, concerned only an affirmation of his own identity. The Supreme Court has held that the "identity of a defendant ... in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *Immigration & Naturalization Service v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984).

---

conflicting testimony, and by determining Mr. Cisneros-Cruz's last statement was voluntary, implicitly gave more weight to the credibility of the agents' testimony. Such credibility determinations are within the sound discretion of the district court. *Anderson v. City of Bessemer City,* 470 U.S. 564, 575 (1985); *Gell-Iren*, 146 F.3d at 830.

For these reasons, we **AFFIRM** the district court's partial denial of Mr. Cisneros-Cruz's motion to suppress.


                                      **Entered by the Court:**

                                      **WADE BRORBY**
United States Circuit Judge