**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 15 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ORLANDO GELL-IREN,

Defendant-Appellant.

No. 96-2222

---

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CR-95-0603-CH)

---

Stephen P. McCue, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

Fred Joseph Federici III, Assistant United States Attorney, Las Cruces, New Mexico (John J. Kelly, United States Attorney, Albuquerque, New Mexico, with him on the brief), for Plaintiff-Appellee.

---

Before **MURPHY, HOLLOWAY,** and **MAGILL,**[*] Circuit Judges.

---

**MAGILL,** Circuit Judge.

---

[*]Honorable Frank J. Magill, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

Orlando Gell-Iren (Gell) was convicted of possessing with intent to distribute ten ounces of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and was sentenced to ninety-four months imprisonment. Gell appeals his conviction, arguing: (1) that his post-arrest statements were improperly admitted at trial because he did not sign a waiver form and because his statements were made to a different officer than the one who had Mirandized him; (2) that the government's conduct of maintaining a three-year investigation of Gell and paying an informant to infiltrate Gell's operation constituted outrageous conduct, mandating reversal; and (3) that trial counsel was ineffective for failing to seek either an outrageous conduct ruling from the trial court or an entrapment instruction for the jury. We affirm.

## I.

Gell, a Cuban-American, owned the Mesquite Auto Service in Las Cruces, New Mexico. From 1992 until 1995, the government investigated Gell as a possible drug supplier to the area. In 1993, the government hired a confidential informant, Julio Dealmas Betancourt (Dealmas), also a Cuban-American, to infiltrate Gell's operation to obtain evidence of drug dealing. Over the course of the next several years, Dealmas befriended Gell, worked with Gell at the Mesquite Auto Service, and practiced the Santero faith with Gell.

-2-

In 1995, Dealmas arranged a drug buy between covert FBI agent Lydia Maese and Gell. According to Dealmas's testimony at trial, Gell arranged to purchase heroin in Ciudad Juarez, Mexico, and agreed to sell the heroin to Agent Maese for $30,000. On October 31, Dealmas, Agent Maese, and Gell met in a Las Cruces McDonald's parking lot. Unknown to Gell, law enforcement officials audio recorded and videotaped the meeting. Agent Maese obtained a McDonald's bag, put $30,000 into it, and handed the bag to Gell. Gell emptied the bag, put a black-tape wrapped package containing ten ounces of heroin into the bag, and handed the bag back to Agent Maese. Gell was then arrested, and law enforcement officers subsequently found additional small amounts of heroin in Gell's van.

At trial, Gell contradicted Dealmas's testimony, and testified that Dealmas had both arranged the deal with Agent Maese and obtained the heroin for Gell. Gell testified that the heroin had been in the McDonald's bag before Gell received it, that he never knew that the substance in the black-tape wrapped package was heroin, and that the police planted the additional heroin in his van.

Following his arrest, Gell was interviewed by FBI agents Larry Houpt and Fred Fresques, at which time Gell made incriminating statements. Prior to trial, Gell sought to have these statements suppressed. According to the testimony of the agents at the suppression hearing, Agent Houpt read Gell his Miranda rights in

Gell's principal language of Spanish, told Gell that he was under arrest, and explained Gell's rights to him. Gell replied "yes" when asked if he understood his rights. When Agent Houpt asked Gell if he wanted to waive his rights and cooperate, Gell said he wanted to talk confidentially to an agent. Agent Fresques then entered the interview room and was informed by Agent Houpt that Gell had been informed of his rights. Gell again indicated that he understood his rights. Gell also told the agents that he wanted to make a deal, but that he did not want any attorneys or prosecutors involved. Agent Houpt told him that no deals or promises could be made without attorneys being involved. While Gell did not sign a waiver of rights form, Gell spoke with the agents and said that he had purchased the heroin on October 30, that he had kept the heroin overnight in his van, and that he had delivered the heroin to the buyer.

Gell's testimony at the suppression hearing presented a very different version of events than that of the agents. Gell testified that he had told the agents that he understood his rights "a little bit," and that he had believed that his statements would not be used against him. The district court found Gell's testimony to be incredible and the agents' testimony to be credible, and held that Gell had voluntarily waived his rights.

Although defense counsel indicated at trial that he would pursue either an outrageous conduct or entrapment defense, he neither moved the district court to

dismiss the case for outrageous conduct nor requested entrapment instructions for the jury. On April 4, 1996, Gell was convicted of possessing with intent to distribute ten ounces of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Gell's van was also forfeited. Gell was sentenced to ninety-four months imprisonment, and Gell's trial counsel filed a notice of appeal. During the pendency of the appeal, trial counsel was replaced by the federal public defender's office.

## II.

### A. Voluntariness of Waiver.

Gell contends that the district court erred in denying his motion to suppress evidence because Gell did not sign a waiver of rights form and because he was not re-Mirandized when Agent Fresques entered the interview room. "In reviewing a denial of a motion to suppress, the trial court's findings of fact must be accepted by the appellate court unless clearly erroneous." United States. v. Johnson, 42 F.3d 1312, 1317 (10th Cir. 1994). In addition, "the credibility of witnesses and the weight to be given the evidence, together with inferences, deductions and conclusions drawn from the evidence, are to be determined by the trial judge." Id. However, "[t]he ultimate question of whether a statement was

voluntary is a question of law reviewed de novo." United States v. Hernandez, 93 F.3d 1493, 1501 (10th Cir. 1996).

The government bears the burden of proving by a preponderance of the evidence that a waiver of Miranda rights was voluntary. See Johnson, 42 F.3d at 1318. The government must prove that a defendant's waiver was "voluntary in the sense that it was a product of a free and deliberate choice rather than intimidation, coercion, or deception," and that the defendant had "a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Id. (quotations omitted). While a waiver of rights must be clear, it does not have to be express. See North Carolina v. Butler, 441 U.S. 369, 374-76 (1979).

In this case, it is clear that Gell's waiver was voluntary and informed. The district court's findings that the FBI agents were credible and Gell was incredible are not clearly erroneous. Accepting these findings, Gell was informed of his rights, stated that he understood his rights, and gave information to the agents despite understanding that he had the right to counsel and the right to remain silent. Indeed, Gell was specifically informed that no deals or promises could be made without the involvement of attorneys. Nothing in the interview setting was coercive or intimidating, and there is no credible evidence that Gell was tricked into believing that his statements would not be used against him. Where a

defendant's actions clearly demonstrate that he has voluntarily waived his Miranda rights, his failure to sign a waiver of rights form does not render his waiver involuntary. See United States v. Austin, 933 F.2d 833, 835-36 (10th Cir. 1991). In addition, we reject Gell's argument that the voluntariness of his waiver was defeated by a mere change in questioners. In the circumstances of this case, we conclude that Gell "must have known that his rights had not materially changed simply because he . . . faced a new interrogator," United States v. Andaverde, 64 F.3d 1305, 1313 (9th Cir. 1995), and therefore hold that a "Miranda warning does not lose its efficacy if a defendant is warned by one officer and then interrogated by another." Id. at 1312.

B. Outrageous Government Conduct.

Gell next argues that his case should have been dismissed because of outrageous government conduct. See United States v. Pedraza, 27 F.3d 1515, 1521 (10th Cir. 1994) ("When the government's conduct during an investigation is sufficiently outrageous, the courts will not allow the government to prosecute offenses developed through that conduct." (quotations omitted)). Although this Court reviews a claim of outrageous government conduct de novo, see United States v. Sneed, 34 F.3d 1570, 1576 (10th Cir. 1994), Gell failed to raise this

issue below. Accordingly, we review only for plain error. See <u>United States v. Duncan</u>, 896 F.2d 271, 275 (7th Cir. 1990).

Government conduct is outrageous if "considering the totality of the circumstances in any given case, the government's conduct is so shocking, outrageous and intolerable that it offends the universal sense of justice." <u>United States v. Lacey</u>, 86 F.3d 956, 964 (10th Cir.) (quotations omitted), <u>cert. denied</u>, 117 S. Ct. 331 (1996). "To succeed on an outrageous conduct defense, the defendant must show either: (1) excessive government involvement in the creation of the crime, or (2) significant governmental coercion to induce the crime." <u>Pedraza</u>, 27 F.3d at 1521. While "[t]he government may not engineer and direct the criminal enterprise from start to finish," <u>United States v. Mosley</u>, 965 F.2d 906, 911 (10th Cir. 1992) (quotations omitted),

> "it is not outrageous for the government to infiltrate an ongoing criminal enterprise, or to induce a defendant to repeat, continue, or even expand previous criminal activity. In inducing a suspect to repeat or expand his criminal activity, it is permissible for the government to suggest the illegal activity, provide supplies and expertise, and act as both a supplier and buyer of illegal goods."

<u>Pedraza</u>, 27 F.3d at 1521 (citations omitted).

We see nothing outrageous in the government's conduct in this case. There is nothing inherently outrageous in a three-year investigation of a suspected drug dealer, and it does not become outrageous simply because the investigation includes a paid informant who shares the suspect's cultural heritage and religious

faith. Here, the government did not create the crime that Gell committed and it did not coerce him into engaging in criminal activity. Rather, while it was Dealmas who arranged the meeting between Gell and Agent Maese, it was Gell who purchased the heroin from sources in Mexico and who was willing to sell a large amount of heroin to a third party. Because there was no outrageous conduct, there could be no plain error in this case, and we reject Gell's argument for reversal.

C. Ineffective Assistance of Counsel.

Finally, Gell argues that his counsel rendered constitutionally ineffective assistance at trial because counsel failed to pursue an entrapment or outrageous conduct defense. This Court has held that "[i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." United States. v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc). The "self-evident" reason for this rule is that:

> "A factual record must be developed in and addressed by the district court in the first instance for effective review. Even if evidence is not necessary, at the very least counsel accused of deficient performance can explain their reasoning and actions, and the district court can render its opinion on the merits of the claim."

Id. (footnote omitted).

In this case, there is no finding by the district court regarding Gell's trial counsel's effectiveness, and Gell's trial counsel has had no opportunity to explain his trial strategy. Without a developed record in this case, it would be impossible for this Court to determine which decisions made by Gell's trial counsel were strategic decisions entitled to deference, and which were simply erroneous. We therefore decline to consider this issue on direct appeal and, consistent with Galloway, dismiss this aspect of Gell's appeal without prejudice.

Accordingly, the judgment of the district court is AFFIRMED.