**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 23 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

    v.

JOHNNY SANDIA,

      Defendant-Appellant.

------------------------

COALITION FOR THE FREE
EXERCISE OF RELIGION IN
SUPPORT OF THE
CONSTITUTIONALITY OF THE
RELIGIOUS FREEDOM
RESTORATION ACT,

      Amicus Curiae.

No. 98-2248

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D. Ct. No. CR 96-717-MV)**

---

John F. Moon Samore, Albuquerque, New Mexico, appearing for Defendant-Appellant.

Jonathon Miles Gerson, Assistant United States Attorney (John J. Kelly, United States Attorney, with him on the brief), Albuquerque, New Mexico, appearing for Plaintiff-Appellee.

Marc D. Stern, American Jewish Congress, New York, New York, filed a brief on behalf of the Amicus Curiae.

---

Before **ANDERSON** , **TACHA** , and **BALDOCK** , Circuit Judges.

---

**TACHA** , Circuit Judge.

---

Defendant-Appellant Johnny Sandia sold a golden eagle skin and other migratory bird parts to a federal undercover agent on several occasions in 1996. Based on these sales and the information gathered during its investigation, the government charged Sandia with eleven violations of the Migratory Bird Treaty Act, 16 U.S.C. § 703 et seq., the Bald and Golden Eagle Protection Act, 16 U.S.C. § 668, and the Lacey Act, 16 U.S.C. § 3371 et seq. Mr. Sandia moved to dismiss the indictment based on his free exercise rights under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1, [1] and on alleged outrageous

---

[1] Under RFRA, government action that burdens the free exercise of religion must further a "compelling government interest" and be "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). Congress passed RFRA in response to the Supreme Court's decision in Employment Div., Dept. of Human Resources of Oregon v. Smith , 494 U.S. 872 (1990), which held that the First Amendment allowed the government to enforce neutral laws of general applicability even when such laws burdened the free exercise of religion. See City of Boerne v. Flores , 521 U.S. 507, 512-16 (1997). The purposes of RFRA are to "restore the compelling interest test . . . and to guarantee its application in all cases where free exercise of religion is substantially burdened" and "to provide a claim or defense to persons whose religious exercise is substantially burdened by government." 42 U.S.C. § 2000bb(b).

government conduct. The district court denied both motions, finding that RFRA did not apply to the federal government and that the government did not engage in outrageous conduct with respect to Mr. Sandia. Mr. Sandia then pled guilty to one violation of the Lacey Act, 16 U.S.C §§ 3372(a)(1), 3373(d)(1)(B), admitting that he illegally sold a golden eagle taken in violation of the Migratory Bird Treaty Act. Defendant reserved his right to appeal the district court's rulings on his motions to dismiss and now exercises that right. We affirm.

## I.

The district court's decision to deny the motion to dismiss based on defendant's religious rights under RFRA is a question of law that we review de novo. Cf. United States v. Wittgenstein, 163 F.3d 1164, 1170 (10th Cir. 1998) (reviewing de novo district court's ruling on motion to dismiss indictment due to alleged due process violations in underlying immigration proceedings); United States v. Cordoba, 71 F.3d 1543, 1545 (10th Cir. 1995) (reviewing district court's denial of motion to dismiss indictment on double jeopardy grounds de novo).

In 1996, the United States Fish and Wildlife Service carried out an undercover investigation of illegal trafficking in protected wildlife in northern New Mexico. During the course of the investigation, an undercover agent met with several members of the Jemez Pueblo and told them he was interested in purchasing eagles and eagle parts. One pueblo member took the agent to meet

Mr. Sandia. Through several transactions, the agent purchased a golden eagle skin and other bird parts from Mr. Sandia.

The Lacey Act prohibits, inter alia, the sale of wildlife taken or possessed in violation of federal law with a value in excess of $350. See 16 U.S.C.A. §§ 3372(a)(1), 3373(d)(1)(B) (West Supp. 1999). Mr. Sandia admitted taking the golden eagle without a permit, in violation of the Migratory Bird Treaty Act. He sold the eagle for $800. Before the district court, defendant claimed a protected right under RFRA to possess the birds and bird parts because the Jemez Pueblo considers the eagle and other birds sacred and uses them in religious ceremonies. Based on the Supreme Court's recent ruling in City of Boerne v. Flores, 521 U.S. 507 (1997), which found RFRA unconstitutional as applied to the states, the district court ruled that RFRA did not apply and therefore denied defendant's motion to dismiss.

Both the government and defendant contend that the district court erred in finding RFRA inapplicable to the federal government. The government, however, urges that we affirm the denial of the motion to dismiss because the offense of conviction – the commercial sale of protected wildlife – does not implicate any religious rights. "[W]e are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." Medina v. City & County of Denver, 960

-4-

F.2d 1493, 1495 n.1 (10th Cir. 1992) (internal quotation marks and citation omitted). We need not reach the RFRA question because defendant took or possessed the eagle in violation of federal law and never claimed his sale of the golden eagle to the government agent had any religious significance.

In essence, defendant's RFRA defense is that he did not take and possess the disputed birds "in violation of any law, treaty, or regulation of the United States," as required by 16 U.S.C. § 3372(a). Mr. Sandia claims that he trapped and possessed protected wildlife solely for religious ceremonial purposes. The taking of the birds for religious purposes, he asserts, is itself imbued with religious significance and comes under the aegis of RFRA. Thus, he argues he legally took the birds and any indictment based upon an illegal taking of the birds must therefore fall.

We do not decide whether Mr. Sandia's taking of the birds was, in the first instance, legal under RFRA because Mr. Sandia subsequently sold the birds he claims to have taken for religious purposes. This subsequent sale of the birds destroys defendant's claim that he engaged in protected religious activity. When defendant decided to sell the birds, he no longer possessed them for a religious purpose and therefore possessed them in violation of federal law. Allowing defendant to defeat an indictment simply by claiming he originally took the birds for religious purposes would render the Lacey Act nugatory and permit people,

under the guise of religion, to stockpile protected species for commercial sale. Simply stated, a defendant may not claim First Amendment or RFRA protection for the taking and possession of a protected bird when he subsequently sells it for pure commercial gain. Cf. United States v. Hugs, 109 F.3d 1375, 1377-78 (9th Cir. 1997) ("A defendant prosecuted under the [Bald and Golden Eagle Protection Act] for purely commercial rather than religious activities may not assert a claim that the free exercise of religion has been infringed by the Act.")

Defendant also did not claim on appeal that his sale of the golden eagle skin had religious significance. In Hugs, the district court found that the defendants, who had purchased golden eagles from a government agent, might have made the purchase for religious purposes. See 109 F.3d at 1378. By contrast, Mr. Sandia expressly stated to the district court that he was not claiming a religious right to make a commercial sale. See Appellant's Opening Br. at 18 ("At no time has Mr. Sandia asserted a . . . right . . . to give him permission to 'engage in trafficking.'"); R., Vol. I, Doc. 30, at 5 ("Mr. Sandia does not claim 'any right to engage in commercial transactions with eagles.'"). [2]

---

[2]At oral argument, defendant's counsel suggested that the sale and/or barter of sacred bird parts to other Native Americans was a tradition and might itself have religious significance. According to counsel, the government agent to whom Mr. Sandia sold the eagle represented himself as a Native American seeking eagle parts for ceremonial purposes. However, petitioner did not specifically raise this argument before the district court or in his briefs to this court. Therefore, petitioner has waived the argument. See Thomas v. Denny's Inc., 111 F.3d 1506,

In sum, defendant's actions in this case were commercial activity prohibited by law and unprotected by RFRA. An evidentiary hearing would not have changed this conclusion, as defendant could not have altered the essential commercial nature of his actions. Thus, the district court did not err in denying the motion to dismiss the indictment based on RFRA.

## II.

Mr. Sandia also claims that the government agent's activities in inducing him to sell the eagle were so extreme as to constitute outrageous government conduct that violated due process and required dismissal of the charges.[3] The district court denied defendant's motion to dismiss on this claim. We review the district court's ruling on government misconduct de novo. See, e.g., United States v. Pedraza, 27 F.3d 1515, 1521 (10th Cir. 1994).

"When the government's conduct during an investigation is sufficiently outrageous, the courts will not allow the government to prosecute offenses developed through that conduct." Id. (internal quotation marks and citation omitted). "Government conduct is outrageous if 'considering the totality of the

1510 n.5 (10th Cir. 1997).

[3]In his opening brief, defendant raises this issue in only the most cursory manner. Generally, the failure to raise an issue in the opening brief waives the issue. See, e.g., State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 984 n.7 (10th Cir. 1994). While one could make a good case that defendant has waived the outrageous government conduct claim, we deem it sufficiently raised and will consider it on the merits.

circumstances in any given case, the government's conduct is so shocking, outrageous and intolerable that it offends the universal sense of justice.'" United States v. Gell-Iren, 146 F.3d 827, 831 (10th Cir. 1998) (quoting United States v. Lacey, 86 F.3d 956, 964 (10th Cir. 1996)). Outrageous conduct generally requires government creation of a crime or substantial coercion to induce the crime. See, e.g., id.; Pedraza, 27 F.3d at 1521. "The outrageous conduct defense, however, is an extraordinary defense that will only be applied in the most egregious circumstances." Pedraza, 27 F.3d at 1521. "It is not to be invoked each time the government acts deceptively or participates in a crime that it is investigating." United States v. Mosely, 965 F.2d 906, 910 (10th Cir. 1992).

Mr. Sandia asserts that the government's cash offer was so powerful to a person living in an impoverished community that it coerced him into the illegal sale. He also claims that he was not predisposed to sell eagles until the government agent came into his community and that the crime was therefore created entirely by the government. According to defendant, an evidentiary hearing would have provided additional evidence supporting this theory. However, neither the record nor Mr. Sandia's proffered information reveals any conduct meeting the outrageous conduct standard.

The facts show that a government undercover agent came to the Jemez Pueblo pretending to be interested in purchasing eagle parts. By defendant's

account, the agent claimed he was Native American and was purchasing the parts for traditional ceremonial purposes. The agent sought out a Jemez Pueblo member, possibly offered him an inducement, and asked him if he knew of anyone selling eagle parts. The pueblo member took the agent to Mr. Sandia. The transaction ensued.

Even assuming the facts defendant sought to proffer, the government here did not create a crime by "'engineer[ing] and direct[ing] the criminal enterprise from start to finish.'" Gell-Iren, 146 F.3d at 831 (quoting Mosley, 965 F.2d at 911 (internal quotation marks omitted)). Though the agent initiated the transactions, defendant participated in them by providing the contraband for sale. The government, as a part of a sting operation, can suggest or initiate illegal activity. See, e.g., United States v. Sneed, 34 F.3d 1570, 1577-78 (10th Cir. 1994); United States v. Harris, 997 F.2d 812, 816 (10th Cir. 1993); Mosley, 965 F.2d at 911-12; see generally United States v. Diggs, 8 F.3d 1520, 1523-25 (10th Cir. 1993) (listing cases from Supreme Court and Tenth Circuit). Like the government agents in Sneed and Harris, the agent in this case initiated the transaction, but did not engineer the crime. See Sneed, 34 F.3d at 1578; Harris, 997 F.2d at 816. The defendant, not the government, arranged the capture of the birds and chose to sell them for commercial gain.

Mr. Sandia makes much of the fact that the undercover agent allegedly

claimed he was a Native American seeking ceremonial components. This cover story supposedly took advantage of defendant and exacerbated the outrageousness of the conduct. We disagree with this conclusion and refuse to prohibit government agents from assuming fictitious roles in the course of an investigation. Finally, the government's use of a pueblo member to initially contact defendant was not improper. "[I]t does not become outrageous [conduct] simply because the investigation includes a paid informant who shares the suspect's cultural heritage and religious faith." Gell-Iren, 146 F.3d at 831. In sum, Mr. Sandia actively participated in the criminal activity, and the government did not engineer the entire crime from start to finish.

The government also did not coerce defendant into committing the crime. "Only governmental coercion that is particularly egregious rises to the level of outrageous conduct." Pedraza, 27 F.3d at 1521. Mr. Sandia argues that the agent's financial inducement to someone with as little annual income as him was an improper offer he could not refuse. We addressed a similar argument in United States v. Martinez, 749 F.2d 601, 605 (10th Cir. 1984), a case in which government agents investigating abuse in the food stamp program sold food stamps at a deep discount to defendants who were "at, or below, the poverty level and needed food stamps to help feed their families." The agents offered the stamps, and the defendants accepted. Despite the defendants' difficult financial

-10-

circumstances, we found no outrageous government conduct in the sale, concluding "[w]hat prompted the defendants to . . . acquire the food stamps is not really relevant." Id. at 605. The instant case presents a similar scenario, and we reach the same result. While the plight of many in the Jemez Pueblo may be serious, financial need does not excuse criminal conduct or give rise to a claim of unconstitutional government conduct. Accordingly, the government did not improperly coerce defendant into engaging in the criminal activity. The district court correctly denied defendant's motion to dismiss for outrageous government conduct.

Based on the foregoing analysis, we AFFIRM the rulings of the district court denying defendant's motions to dismiss. Appellant's motion for leave to submit record references is GRANTED.