**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 28 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

MARK GRAMS,

      Defendant - Appellant.

No. 03-1332

---

**ORDER AND JUDGMENT** [1]

---

Before **TACHA** , Chief Circuit Judge, **LUCERO** , and **MURPHY** , Circuit Judges.

---

Mark Grams entered a conditional guilty plea to transporting a fraudulent security in interstate commerce in violation of 18 U.S.C. § 2314, which was the consequence of his alleged theft of a $191,700 check from his employer. He appeals the district court's partial denial of his motion to suppress evidence as well as the district court's denial of his motion to dismiss the indictment for outrageous government conduct. We exercise jurisdiction under 28 U.S.C. § 1291 and **AFFIRM**.

---

[1] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

We summarily state the background facts and procedural history, which are addressed in substantial detail in the district court's Memorandum and Order of February 10, 2003. On July 26, 1995, Grams, who was then treasurer of Beaver Creek Resort Company and finance director of Vail Associates, diverted a $191,700 check payable by Beaver Creek to Gillig Corporation, that had been issued in connection with a negotiation for purchase of transportation buses for Beaver Creek. No one had focused on the disappearance of the check until 1997, when accountants inquired about the book entry of $191,700. In attempting to obtain information about the check from Grams, it was determined that he had left on vacation, a work break from which he apparently elected not to return. Over the next eighteen months, investigations were launched by Vail Associates personnel, federal, and state authorities. These various investigations gradually uncovered evidence which led all to conclude that Grams was responsible for the theft of the money.

On the basis of the evidence, which consisted of bank account numbers and details of financial transactions through which Grams diverted the money in question, the FBI issued a warrant for Grams' arrest. Grams was arrested in Jackson Hole, Wyoming on April 6, 1999. On November 12, 1999, Grams moved to suppress the evidence under the Right to Financial Privacy Act, 12 U.S.C. §§ 3401-3421, and the Fourth Amendment of the United States Constitution. On

March 23, 2001, Grams requested dismissal of the indictment.

After holding several hearings on Grams' motions to suppress and to dismiss the indictment, the district court issued a Memorandum and Order on February 11, 2003, detailing its findings and conclusions and ultimately granting in part and denying in part the motion to suppress. Specifically, the district court found that the government had violated Grams' Fourth Amendment rights by directing Grams' roommate to open his mail and issuing a federal grand jury subpoena for the contents of Grams' private mailbox. Thus, as to evidence which the district court determined to have been derived from those violations, the district court granted the motion to suppress.

On the other hand, the district court found much of the evidence against Grams admissible against him despite the Fourth Amendment violations. It found that as to some parts of the evidence, Grams failed to demonstrate a factual nexus between the illegality and substantial portions of the challenged evidence. See United States v. DeLuca, 269 F.3d 1128, 1132 (10th Cir. 2001). With respect to other portions of the evidence, the district court found that it either was discovered by means wholly independent of any constitutional violation, see Nix v. Williams, 467 U.S. 431, 443 (1984); United States v. Griffin, 48 F.3d 1147, 1150 (10th Cir. 1995), or that it was sufficiently distinguishable from any constitutional violation to be purged from the primary taint, Griffin, 48 F.3d at

1150.

The district court also denied Grams' motion to dismiss the indictment. Grams filed a motion for reconsideration of that dismissal and reasserted that the indictment should be dismissed, this time arguing that the government's extreme and outrageous conduct in its pursuit of him justified dismissal. On April 1, 2003, the district court orally denied Grams' motion to reconsider.

Grams ultimately pled guilty to the charge of transportation in interstate commerce of a stolen check in violation of 18 U.S.C. § 2314, preserving his right to appeal the denial of his suppression motions and his motion to dismiss the indictment. Having been sentenced to a term of fifteen months in prison and three years supervised release, Grams appealed, advancing two arguments of district court error: (1) that the district court's partial denial of Grams' motion to suppress was based on its erroneous finding of no factual nexus between the Fourth Amendment violations and the warrants that led to the evidence against him; and (2) that the court failed to take into account the government's improper conduct and therefore erred in refusing to dismiss the indictment.

With respect to the district court's partial denial of Grams' motion to suppress, "[w]e consider the totality of the circumstances and view the evidence in a light most favorable to the government." United States v. Avery, 295 F.3d 1158, 1167 (10th Cir. 2002) (quotation omitted). We review the district court's

factual determinations for clear error and "will not reweigh the evidence presented to the district court, second guess the district court's credibility assessments, or question 'reasonable inferences' the district court drew from the evidence." Id. We review the ultimate determination of reasonableness under the Fourth Amendment de novo. Id.

Our review of the record convinces us that the district court's consideration of Grams' motion to suppress was correct in all respects. The evidence that the court refused to suppress either lacked a factual nexus to the Fourth Amendment violations, was uncovered through independent and legitimate sources, or was sufficiently distinguishable to be purged from the primary taint. For substantially the same reasons relied upon by the district court in its Order and Memorandum of Decision dated February 11, 2003, therefore, we **AFFIRM** the district court's decision to partially deny Grams' motions to suppress the evidence against him.

As to Grams' appeal of the district court's denial of his motion to dismiss for outrageous conduct, our review is de novo. United States v. Pedraza, 27 F.3d 1515, 1521 (10th Cir. 1994). We have explained that "[w]hen the government's conduct during an investigation is sufficiently outrageous, the courts will not allow the government to prosecute offenses developed through that conduct." United States v. Sandia, 188 F.3d 1215, 1219 (10th Cir. 1999) (quotation omitted). "Government conduct is outrageous if considering the totality of the

circumstances in any given case, the government's conduct is so shocking, outrageous, and intolerable that it offends the universal sense of justice." Id. Moreover, "[o]utrageous conduct generally requires government creation of a crime or substantial coercion to induce the crime." Id.

Having examined the record carefully and upon consideration of the totality of the circumstances, we conclude that the government's conduct in prosecuting the instant case does not meet this extremely high standard. Accordingly, we **AFFIRM** the district court's denial of Grams' motion to dismiss the indictment.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge