FILED
**United States Court of Appeals**
**Tenth Circuit**

**June 24, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

TOMMY PEÑA,

     Defendant - Appellant.

No. 19-2050

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 2:10-CR-2138-WJ-2)**
_____

Stephanie Wolf, Assistant Federal Public Defender (Stephen P. McCue, Federal Public Defender, and Jane Greek, Assistant Federal Public Defender, with her on the briefs), Las Cruces, New Mexico, for Defendant-Appellant.

Marisa A. Ong, Assistant United States Attorney (John C. Anderson, United States Attorney, with her on the brief), Las Cruces, New Mexico, for Plaintiff-Appellee.

_____

Before **TYMKOVICH**, Chief Judge, **SEYMOUR** and **MORITZ**, Circuit Judges.
_____

**SEYMOUR**, Circuit Judge.
_____

     Tommy Peña was convicted in the United States District Court for the District of

New Mexico of conspiracy to commit a carjacking in violation of 18 U.S.C. §§ 371 &

2119, carjacking and aiding and abetting in violation of 18 U.S.C. § 2 & 2119, using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(i), possession of methamphetamine in violation of 21 U.S.C. § 844(a), and four counts of felon in possession of a firearm and/or ammunition in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2). For these offenses, the district court initially sentenced Mr. Peña to 480 months. However, after the Supreme Court's decision in *Johnson v. United States*, 135 S.Ct. 2551 (2015), Mr. Peña no longer qualified for a sentence enhancement under 18 U.S.C. § 924(e). At resentencing, the district court imposed a 360-month sentence, varying upward from the guidelines. Mr. Peña appeals his sentence, and we affirm.[1]

## I.

## BACKGROUND

Following a bench trial in December 2010, Tommy Peña was convicted in federal court. His conviction was based upon his conduct in four incidents that occurred in April 2010: the Lacey carjacking incident on April 6, 2010; the drive-by shooting on April 10, 2010; the Luna vehicle theft on April 18, 2010; and the car chase and defendant's subsequent arrest on April 19, 2010.

---

[1] We also grant the government's March 12, 2020 motion to supplement the record with Mr. Peña's Presentence Investigation Report.

2

## A.    Sentencing

### 1.    Lacey Carjacking Incident

Mr. Peña and his co-defendant, Jeremy Conde, were hired by Isabel Saucedo to retrieve cash from the household of Arthur Lacey because Ms. Saucedo believed Mr. Lacey had stolen the cash from her. If they could not retrieve the cash, Ms. Saucedo agreed that they could take Mr. Lacey's car that he allegedly purchased with the cash. Ms. Saucedo offered to pay Mr. Peña and Mr. Conde with an ounce of methamphetamine for assisting her.

When the three of them went to the Lacey household, Mr. Peña carried a loaded handgun while Mr. Conde carried a firearm with bullets in the clip but not the chamber. When Mr. Lacey opened the door, Mr. Peña pointed his gun at him and Mr. Conde pointed his gun at both Ms. Lacey, who was nine months pregnant, and one of the Laceys' children. After Mr. Lacey fled, Mr. Peña and Mr. Conde ransacked the house. Mr. Peña then took the keys to Mr. Lacey's car and drove away. The district court found Mr. Peña guilty of four counts related to the Lacey incident, conspiracy to commit carjacking in violation of 18 U.S.C. §§ 371 & 2119, carjacking and aiding and abetting in violation of 18 U.S.C. §§ 2 & 2119, being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2), and using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(i).[2]

---

[2] Although the district court found that Mr. Peña brandished the firearm during the Lacey incident, the indictment charged him only with possessing the firearm in furtherance

### 2. Drive-By Shooting Incident

On April 10, 2010, Mr. Peña and Mr. Conde were driving when a group of people standing in front of an apartment building shot at them and hit Mr. Conde. Both Mr. Peña and Mr. Conde returned shots, with Mr. Peña reaching out of the passenger window and shooting over the roof of the car. For Mr. Peña's involvement in the drive-by shooting, the district court found him guilty of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) & 924(a).

### 3. Luna Vehicle Theft

On April 18, 2010, when Fred Luna drove past the home where Mr. Peña was staying, Mr. Peña and Mr. Conde perceived him to be "mad dogging" them by giving them a "hard look." Rec, vol. I at 312–13. Armed with handguns, they followed Mr. Luna. He pulled into a church parking lot and got out of his truck, leaving the door open and ignition running. When Mr. Peña and Mr. Conde pulled into the church parking lot and pointed their guns at Mr. Luna, he ran from his vehicle and attempted to enter the church, but it was locked. Mr. Conde got into Mr. Luna's truck and began to drive it. Planning to stop Mr. Conde and Mr. Peña from taking his truck, Mr. Luna started to run toward the truck but decided that it was not worth the risk. Mr. Conde and Mr. Peña drove Mr. Luna's truck to an abandoned house, removed the stereo and speakers, wiped the truck down, and then left it.

---

of a crime of violence under 18 U.S.C. § 924(c)(1)(A)(i), not brandishing it during the offense under § 924(c)(1)(A)(ii). Rec, vol. I at 592.

4

For the Luna incident, the district court found Mr. Peña guilty of one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) & 924(a). Although Mr. Peña was also charged with carjacking, conspiracy to commit carjacking, and using and carrying a firearm during and in relation to a crime of violence, the district court determined he was not sufficiently near his truck at the time he formed the intent to steal it. Because no carjacking occurred, Mr. Peña also could not be found guilty of aiding and abetting a carjacking, conspiracy to commit carjacking, or using and carrying a firearm during the incident, and he was therefore acquitted of those charges.

### 4. Car chase and Mr. Peña's arrest

On April 19, 2010, Mr. Peña was the passenger in a car that failed to pull over when a Roswell police officer activated his emergency lights. A chase ensued, the car was wrecked, and Mr. Peña fled on foot. He was subsequently stopped and arrested. He was found in possession of two firearms, almost one hundred rounds of ammunition, and 6.4 grams of methamphetamine. Accordingly, Mr. Peña was convicted of one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) & 924(a) and one count of possession of methamphetamine in violation of 21 U.S.C. § 844(a).

In 2011, the district court sentenced Mr. Peña to 480 months' imprisonment for his convictions arising out of the four incidents. At the time, Mr. Peña was subject to an enhanced sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), and his 480-month sentence was within the United States Sentencing Guidelines range of 360 months to life under the 2010 version of the guidelines.

5

**B. Resentencing**

After the Supreme Court's decision in *Johnson v. United States*, 135 S.Ct. 2551 (2015), Mr. Peña no longer qualified for an enhanced sentence under the ACCA. In *Johnson*, the Supreme Court held that the residual clause of the ACCA was unconstitutionally vague and therefore could not be a basis for imposing harsher penalties. *Id.* at 2557. The district court determined that because Mr. Peña's prior conviction for shooting at a dwelling or occupied building was based upon the residual clause, he was entitled to resentencing.

In 2018, after extensive briefing by the parties, testimony at the resentencing hearing, and oral argument, the district court assessed a new sentencing range of 63–78 months under the 2016 guidelines, based on an offense level of 22 and a criminal history category IV. With the § 924(c) mandatory minimum of 60 months, the total adjusted range was 123–138 months' imprisonment. The United States requested an upward variance to a 30-year, or 360-month, sentence. The district court agreed and provided a detailed justification for imposing the 30 year sentence. Mr. Peña appeals, contending the sentence is procedurally and substantively unreasonable.

## II.

### PROCEDURAL REASONABLENESS

Mr. Peña contends the court failed to consider all the 18 U.S.C. § 3553(a) factors and improperly compared Mr. Peña with the class of offenders who have previous § 924(c) convictions. Because Mr. Peña did not raise his procedural error claim below,

we review for plain error. *United States v. Lopez-Flores*, 444 F.3d 1218, 1221 (10th Cir. 2006). Under the plain error standard, we will vacate a sentence only if: "(1) there is error, (2) that is plain; (3) that affects substantial rights, or in other words, affects the outcome of the proceeding; and (4) substantially affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Chavez*, 723 F.3d 1226, 1232 (10th Cir. 2013). "An error is plain if it is clear or obvious under current, well-settled law. In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue." *United States v. DeChristopher*, 695 F.3d 1082, 1091 (10th Cir. 2012) (citation omitted). Mr. Peña has the burden of establishing the four elements of plain error. *See United States v. Hall*, 625 F.3d 673, 684 (10th Cir. 2010).

Mr. Peña first asserts that during his resentencing the district court erred by not considering all of the information required by 18 U.S.C § 3553. He argues that the district court only considered his criminal conduct and history and failed to consider mitigating factors such as his childhood circumstances, history of methamphetamine use, and prescription for anti-depressant medication. When assessing a sentence, district courts must consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Where the court explicitly considers a defendant's history and characteristics, there is no procedural error. *See United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1222 (10th Cir. 2008).

Here, the district court thoroughly discussed Mr. Peña's history and characteristics but did "not find Pena's arguments or his evidence persuasive enough to outweigh the

7

substantial weight the Court assign[ed] to the nature of his adult criminal convictions for violent offenses involving firearms, his juvenile conduct involving firearms use, and his post-conviction conduct involving possession of dangerous weapons while incarcerated." *United States v. Peña*, 2018 WL 6003538, at *7 (D.N.M. Nov. 15, 2018). The court also reviewed Mr. Peña's presentence report, which includes the mitigating factors Mr. Peña raises on appeal. We therefore find no support for Mr. Peña's claim that the district court erred by not considering all of the § 3553(a) factors.

Mr. Peña next contends the district court erroneously compared him with offenders subject to mandatory minimum sentences under § 924(c).[3] He asserts the court incorrectly believed that he would have been subject to "two additional consecutive 25-year sentences" if the drive-by shooting and the Luna car theft could have been prosecuted as federal offenses. Aplt. Br. at 18. But Mr. Peña misconstrues the district court's statement. The court explicitly stated that it was *not* basing Mr. Peña's sentence on the possibility of additional sentences for uncharged or acquitted conduct: "[t]he Court

---

[3] Mr. Peña also asserts that an amendment to § 924(c) applied at the time of his resentencing, which prevented the 25-year consecutive sentences from applying to his conduct. However, he is mistaken as to the timing of this amendment. When Mr. Peña was resentenced in November 2018, if a defendant was convicted of using a firearm to commit two crimes of violence as part of two separate crime sprees charged together in an indictment, a mandatory minimum of 25 years for the second offense was applicable. *See* 18 U.S.C. § 924(c)(1)(C)(i) (2018) (amended 2018). As part of the First Step Act of 2018, Congress amended the provision in December 2018, shortly after Mr. Peña's resentencing, so that the mandatory 25-year consecutive sentence only applies where the second § 924(c) conviction occurs after the first § 924(c) conviction "has become final." Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221–22 (2018) (codified at 18 U.S.C. § 924(c)(1)(C)(i)).

does not view this *possibility* as a fact in imposing this sentence, and the Court is expressly not imposing this sentence as punishment for the carjacking against Luna because Pena was acquitted of that charge and the related charges." *Peña*, 2018 WL 6003538, at \*15. Because there was no plain procedural error, we need not address the remaining elements of plain error review.

## III.

## SUBSTANTIVE REASONABLENESS

Mr. Peña also challenges his sentence as substantively unreasonable. We review this issue for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007) ("Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard."). Applying this standard, we give "substantial deference" to the district court and will only overturn a sentence that is "arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Sayad*, 589 F.3d 1110, 1116 (10th Cir. 2009) (citation omitted). As Mr. Peña notes, we should not just provide a rubber stamp of approval to the lower court's sentence. *United States v. Pinson*, 542 F.3d 822, 836 (10th Cir. 2008). We "therefore must determine if the district court's proffered rationale, on aggregate, justifies the magnitude of the sentence." *Id.* at 837.

"Substantive reasonableness involves whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007). Mr.

9

Peña raises seven arguments for substantive unreasonableness: (1) the district court's mischaracterization of the offense conduct, (2) Mr. Peña's post-conviction conduct in prison, (3) the sentencing disparity with Mr. Peña's co-defendant, (4) the court's punishment for exercising the right to trial, (5) the court's statement that Mr. Peña received a "windfall" from the court's dismissal of a federal carjacking charge, (6) Mr. Peña's age and reduced risk of recidivism, and (7) the extent of the court's upward variance from the applicable guidelines range. We address each of Mr. Peña's arguments in turn.

## A.      Mischaracterization of the Offense Conduct

Mr. Peña maintains that the district court overemphasized the seriousness of his conduct in the Lacey incident, the drive-by shooting, and the Luna incident. First, Mr. Peña contends his conduct during the Lacey incident was not as egregious as his co-defendant's conduct because Mr. Peña pointed his gun only at Mr. Lacey while his co-defendant, Mr. Conde, pointed his gun at the pregnant Ms. Lacey and one of the Laceys' children. Next, Mr. Peña asserts that the district court mischaracterized his conduct during the drive-by shooting as shooting *at* people, contending instead that he responded to incoming fire by shooting over the roof of the car. Mr. Peña insists he intended only to scare them, not to hurt anyone. Finally, Mr. Peña argues the public danger during the Luna vehicle theft was not extreme because he only pointed his gun at Mr. Luna in an empty church parking lot and did not actually shoot the gun.

10

While Mr. Peña may disagree with the district court as to the dangerousness of his conduct, this does not make his sentence substantively unreasonable. The district court has the role of factfinder at sentencing and "we defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value." *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (citation omitted). "We will not challenge [the court's] evaluation unless it finds no support in the record, deviates from the appropriate legal standard, or follows from a plainly implausible, irrational, or erroneous reading of the record." *Tanberg v. Sholtis*, 401 F.3d 1151, 1160 (10th Cir. 2005) (citing *United States v. Robinson*, 39 F.3d 1115, 1116 (10th Cir. 1994)).

Here, the district court carefully considered the facts surrounding Mr. Peña's conduct. While the court found that Mr. Peña did not point his gun at Ms. Lacey or her children, Mr. Peña "initiated the entry into the home by pointing his handgun at Arthur Lacey in a threatening manner." *Peña*, 2018 WL 6003538, at *6. The court concluded that Mr. Peña's brandishing of firearms "in the presence of the children and the pregnant wife makes [his] conduct highly dangerous and reckless" and "implicates completely innocent victims." *Id.*

The court also acknowledged that during the drive-by shooting incident Mr. Conde was shot before Mr. Peña and Mr. Conde returned fire. However, the court concluded that "no one can dispute the serious and potentially dangerous threat to innocent life [posed] by Pena's conduct of putting his arm out the window of the passenger side and shooting

11

over the roof of the vehicle." *Id.* The court also determined that Mr. Peña's conduct in the Luna incident "placed any number of innocent bystanders in danger" because churches "attract high numbers of vulnerable populations, including children, the disabled, and the elderly." *Id.* Even though no churchgoers were present in the parking lot at the time, the district court still determined that there was a high "potential [for] harmful consequences." *Id.* Although Mr. Peña insists that he never intended to hurt anyone and did not actually injure anyone during these offenses, these facts, even if true, do not make the sentence substantively unreasonable.

## B.    Mr. Peña's Post-Conviction Conduct in Prison

Mr. Peña asserts that the district court failed to adequately consider all relevant information regarding his post-conviction conduct. He claims the court overemphasized his weapons violations and failed to consider the impact on recidivism of the programs and classes Mr. Peña completed. We are not persuaded.

Agent Reshay Childress, a senior intelligence analyst for the Bureau of Prisons who worked at the United States Prison at Beaumont ("USP Beaumont"), testified at Mr. Peña's resentencing. He explained the four classifications for inmate offenses, 100 series offenses being the most dangerous and 400 series offenses being the least. At the time of the resentencing hearing, Mr. Peña had been subject to eight disciplinary actions while incarcerated at USP Beaumont, including five Number 104 violations for possessing a dangerous weapon. His other three violations were for fighting with another person (Number 201), refusing to obey an order (Number 307), and possessing an unauthorized

12

item (Number 305). Based on some of these violations, Mr. Peña was transferred to a Special Management Unit ("SMU"), a segregated housing unit designed to increase supervision of inmates and ensure safety. As a part of the SMU program, Mr. Peña took vocational and educational classes.

Mr. Peña completed the SMU program in sixteen months and returned to the general population at USP Beaumont. *After* completing the SMU program, Mr. Peña received two of his five Number 104 weapons violations. Both incidents involved possession of knives. After the second incident another inmate requested protective custody, expressing fear for his life based upon his belief that Mr. Peña intended to stab him. Prison officials found the inmate's fear to be credible and recommended his transfer to another facility.

Although the district court did give significant weight to Mr. Peña's post-conviction conduct, the court also considered the danger at USP Beaumont as a reason why Mr. Peña might have a weapon and acknowledged Mr. Peña's participation in vocational and academic classes. After weighing the evidence in the record, the district court concluded that Mr. Peña "is determined to possess dangerous weapons and he will continue to defy the law to do so." *Peña*, 2018 WL 6003538, at *12. Moreover, the court was not persuaded by the fact that Mr. Peña has not yet hurt anyone because his "history and characteristics reveal that he is completely capable of causing harm to innocent members of society." *Id.* The court emphasized the need to protect the public from Mr.

13

Peña. While Mr. Peña may disagree with the district court as to the weight of his post-conviction conduct on his sentence, the district court did not abuse its discretion.

C.      **Sentencing Disparity with Mr. Peña's Co-Defendant**

Mr. Peña points to the sentencing disparity with his co-defendant, Mr. Conde, as evidence of the substantive unreasonableness of his sentence. In assessing a sentence, "[a] district court may consider sentencing disparities between co-defendants, but the purpose of the Guidelines is not to eliminate disparities among co-defendants, but rather to eliminate disparities among sentences nationwide." *United States v. Zapata*, 546 F.3d 1179, 1194 (10th Cir. 2008) (internal citation omitted). Moreover, "[18 U.S.C.] § 3553(a)(6)'s consideration of unwarranted sentence disparities is but one factor that a district court must balance against the other § 3553(a) factors in arriving at an appropriate sentence." *United States v. Martinez*, 610 F.3d 1216, 1228 (10th Cir. 2010).

Here, the district court correctly considered any sentencing disparity between "similarly situated defendants," as required by 18 U.S.C. § 3553(a)(6). *Peña*, 2018 WL 6003538, at *14–15. Although Mr. Conde received a sentence of only 36 months, he had cooperated with the government, entered into a plea agreement, testified against Mr. Peña, accepted responsibility, and demonstrated a commitment to reforming his behavior. He was also sentenced from a much lower guidelines range, 70–87 months, than Mr. Peña. Given the vast differences in the circumstances related to Mr. Conde's sentence,

14

the disparity between his and Mr. Peña's sentences is not sufficiently compelling to demonstrate substantive unreasonableness.

**D.      Exercising the Right to Trial**

Mr. Peña also contends the district court punished him for going to trial, asserting that he "implicitly accepted responsibility" for his conduct. Aplt. Br. at 17. Mr. Peña claims he acknowledged his conduct in the Luna incident and exercised his right to trial only to challenge the government's position that his conduct violated the statute. Mr. Peña believes he should have received a reduction in his sentence based on acceptance of responsibility.

We have only approved of acceptance of responsibility adjustments after a trial where the defendant "admitted to all the conduct with which he was charged" but went to trial to preserve issues unrelated to factual guilt. *See, e.g., United States v. Gauvin*, 173 F.3d 798, 806 (10th Cir. 1999) (affirming the application of the acceptance of responsibility guideline where the defendant only contested the legal element of intent); *see also* U.S.S.G. §3E1.1 application notes cmt.2 ("This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt . . . ."). Mr. Peña is correct that his decision to go to trial was not frivolous because the district court found that one of the carjacking charges did not meet the elements under federal law and

15

dismissed the charge. But Mr. Peña went to trial on all counts of the indictment; he did not stipulate to any elements for any of the counts. Accordingly, the district court did not abuse its discretion in finding that Mr. Peña did not accept responsibility for his conduct. Nothing else in the court's opinion suggests a penalty for Mr. Peña exercising his right to trial.

**E.      "Windfall" for the Dismissal of a Carjacking Charge**

Mr. Peña next takes issue with the district court's reasoning that he received a benefit from the *Johnson* decision and a "windfall" from the dismissal of one count of carjacking for his conduct in the Luna incident. Mr. Peña argues that a defendant does not receive a windfall when the law is correctly applied. This argument disregards the context in which the district court discussed a "windfall."

While considering the need to avoid unwarranted sentencing disparities as required by 18 U.S.C. § 3553(a)(6), the district court noted that "[t]he ruling under *Johnson* significantly reduced Pena's exposure at resentencing, as it has for certain defendants nationwide." *Peña*, 2018 WL 6003538, at *15. The court then concluded that "any potential nationwide sentence disparity is not unwarranted in this case when the Court considers 'similar conduct' for which other similarly situated defendants have been found guilty." *Id.*

The "similar conduct" the district court referred to included Mr. Peña's actions in the drive-by shooting and the Luna incident. The court noted that Mr. Peña was not prosecuted in state court for his conduct in those incidents pursuant to N.M. Stat. § 30-3-

16

8 (shooting at a dwelling or occupied building, or shooting at or from a motor vehicle) and N.M. Stat. § 30-16D-1 (unlawful taking of a vehicle or motor vehicle).[4] Because Mr. Luna was not close enough to his truck for the theft of it to constitute carjacking, Mr. Peña was acquitted of that crime as well as conspiracy to commit carjacking and using and carrying a firearm during and in relation to a crime of violence. *See United States v. Brown*, 200 F.3d 700, 705 (10th Cir. 1999) (carjacking requires that a victim be "sufficiently near to the vehicle for it to be within reach, inspection, or control, and absent threat or intimidation, to be able to maintain control of it.") (citation omitted). It was for this reason that the district court said "a windfall . . . results for Pena from [the court]'s finding that Luna, who had run across the church parking lot out of fear of being shot, was not close enough to the vehicle for the theft of it to satisfy the legal definition of carjacking." *Peña*, 2018 WL 6003538, at *15.

Significantly, the district court clarified that it did not consider the additional offenses for the drive-by and the Luna incidents when it imposed Mr. Peña's sentence. It only mentioned Mr. Peña's acquitted conduct for the purpose of comparing him to other similarly situated defendants. *See United States v. Todd*, 515 F.3d 1128, 1137 (10th Cir. 2008) ("The Supreme Court and this circuit have both expressly held that acquitted conduct *can* be considered for purposes of sentencing.") (citing *United States v. Watts*,

---

[4] The Supreme Court has recently confirmed that the dual sovereignty doctrine, which allows for prosecution by the state and the United States for the same conduct, does not violate double jeopardy. *See Gamble v. United States*, 139 S.Ct. 1960, 1964 (2019).

519 U.S. 148, 154 (1997) (per curiam)). Given this context, the court's statement that Mr. Peña received a "windfall" does not make Mr. Peña's sentence substantively unreasonable.

**F.      Mr. Peña's Age and Risk of Recidivism**

At resentencing, Mr. Peña cited a 2004 study by the Sentencing Commission observing that "[r]ecidivism rates decline relatively consistently as age increases." U.S.S.C., *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* 12, 28 (May 2004). He argues on appeal that his sentence is substantively unreasonable because the district court discounted his age (33 at the time of resentencing) as well as the fact that even under a within-guidelines sentence he would be less likely to recidivate by the time he was released. He also cites a 2017 study concluding that "[o]lder offenders were substantially less likely than younger offenders to recidivate following release." U.S.S.C., *The Effects of Aging on Recidivism Among Federal Offenders* 3 (Dec. 2017).

The district court addressed the 2004 study cited by Mr. Peña by discussing the same 2017 study, which the government cited below. Significantly, the study found that the recidivism rate *increases* among older federal offenders *where the offender committed crimes involving firearms*. *Id.* at 25. The court was "persuaded by the 2017 Study that [the sentence imposed was] sufficient, but not greater than necessary to significantly reduce the likelihood of recidivism" because Mr. Peña's "actions and post-conviction conduct . . . show a lack of effort on Pena's part to even attempt to reform his behavior."

18

*Peña*, 2018 WL 6003538, at *14. Thus, the district court specifically considered Mr. Peña's age at the time of resentencing and disagreed as to his likelihood of recidivism.

**G.      Extent of the Upward Variance from the Applicable Guidelines Range**

Finally, Mr. Peña argues that the sentence's upward variance from the applicable guidelines range is substantively unreasonable. "If [the district court] decides that an outside-Guidelines sentence is warranted, [the court] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50. On review, we must "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* at 51.

Mr. Peña attempts to distinguish the three cases the district court relied on in supporting the upward variance, cases where this court upheld large upward variances as substantively reasonable. *Pinson*, 542 F.3d at 836 (affirming a 135-month upward variance); *United States v. Gantt*, 679 F.3d 1240, 1250–51 (10th Cir. 2012) (concluding that a 156-month upward variance was reasonable); and *United States v. Worku*, 800 F.3d 1195, 1208 (10th Cir. 2015) (determining an upward variance of 31 offense levels was substantively reasonable). Mr. Peña argues that he has no prior convictions for injuring someone and therefore he should not receive a harsher sentence than defendants with "much more egregious histories." Aplt. Br. at 23.

Mr. Peña also cites a Fourth Circuit case to support his argument that the variance from the guidelines range is so extreme as to be substantively unreasonable. *See United*

19

*States v. Tucker*, 473 F.3d 556 (4th Cir. 2007). In *Tucker*, the Fourth Circuit determined that a 144-month sentence for one count of bank fraud was substantively unreasonable because "the district court did not provide compelling reasons to justify the extent of the variance" and the circumstances of the case did not warrant the extreme variance. *Id.* at 557. The Fourth Circuit explained the need to "maintain[ ] a strong connection between the sentence imposed and the offender's real conduct—a connection important to the increased uniformity of sentencing." *Id.* at 564 (quoting *United States v. Booker*, 543 U.S. 220, 246 (2005)). Mr. Peña argues the district court broke the connection between his conduct and his sentence.

We are not persuaded. We agree with the district court that the cases are useful in providing "guidance in how to satisfy the Tenth Circuit review of procedural and substantive reasonableness," but the cases do not restrict a district court's ability to impose an upward sentence only where specific facts are present. *Peña*, 2018 WL 6003538, at *18. The reasoning of *Pinson*, *Gantt*, and *Worku* support the court's decision to impose an upward variance. In all three cases, the district courts pointed to the defendant's history of violent or criminal conduct when reasoning that an above-guidelines sentence was required. *Pinson*, 542 F.3d at 837; *Gantt*, 679 F.3d at 1250–51; *Worku*, 800 F.3d at 1207–08. In two of the cases, the danger the defendant posed to the public was also emphasized as part of the court's justification for imposing an upward variance. *Pinson*, 542 F.3d at 837; *Gantt*, 679 F.3d at 1250–51. The district court here similarly explained that it "placed great weight on the determination that Pena's offense

20

conduct and his history and characteristics support this upward variance," emphasizing in particular that Peña brandished his firearm during the carjacking and "also brandished or used a firearm during the Luna vehicle theft and during the drive-by shooting, both of which threatened public safety with death or serious bodily harm." *Peña*, 2018 WL 6003538, at \*19. The court determined accordingly that a within-guidelines sentence would not "satisfy the sentencing goals of § 3553(a)(2), particularly in protecting the public and deterring future criminal conduct." *Id.*

The decision here stands in contrast to the Fourth Circuit's decision in *Tucker*, where "the district court offered no compelling justification for why a 144 month sentence was necessary to protect society." 473 F.3d at 564. Here the district court offered significant explanation for the sentence imposed and determined that a within-guidelines sentence would be "woefully inadequate to accomplish the goals of sentencing." *Peña*, 2018 WL 6003538, at \*5.

Although the variance from the guidelines here is large, the district court addressed each of the § 3553(a) factors, provided compelling reasons for the upward variance, and thereby maintained the connection between Mr. Peña's conduct and the sentence imposed. Given the district court's detailed explanation of Mr. Peña's sentence, he cannot meet his burden of showing the sentence is arbitrary, whimsical, or substantively unreasonable.

For the foregoing reasons, we AFFIRM.