**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**June 11, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

—————————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ANTWON MONTRELL JACKSON, a/k/a
A Plus, a/k/a Plus,

    Defendant - Appellant.

No. 25-6159
(D.C. No. 5:24-CR-00450-R-1)
(W.D. Okla.)

—————————————————

## ORDER AND JUDGMENT[*]

—————————————————

Before **BACHARACH**, **McHUGH**, and **CARSON**, Circuit Judges.

—————————————————

In this direct criminal appeal, Defendant-Appellant Antwon Montrell Jackson
asks that we reverse the district judge's sentencing determination as substantively
unreasonable. After Mr. Jackson pleaded guilty to conspiring to commit child sex
trafficking in violation of 18 U.S.C. § 1594(c), the district judge elected to vary
upwards from Mr. Jackson's advisory U.S. Sentencing Guidelines range of 70 to 87
months to impose a term of imprisonment of 156 months. Exercising jurisdiction

———————————

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with Federal
Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

under 28 U.S.C. § 1291, we discern nothing substantively unreasonable about Mr. Jackson's sentence, and so we affirm.

## I.    BACKGROUND

In February 2025, Mr. Jackson and his co-defendant/co-conspirator, Sarah Larayna Holland, were charged by superseding indictment with (1) conspiracy to commit child sex trafficking in violation of 18 U.S.C. § 1594(c), and (2) child sex trafficking in violation of 18 U.S.C. § 1591(a)(1) and (c). Mr. Jackson was also charged with obstruction of sex trafficking enforcement in violation of 18 U.S.C. § 1591(d), based on his request—memorialized on a recorded jail call—that his sister prevent a minor sex trafficking victim, Jane Doe, from testifying at his trial.

In April 2025, Mr. Jackson and the Government entered into a plea agreement under which Mr. Jackson agreed to plead guilty to Count 1, conspiracy to commit child sex trafficking. In exchange, the Government agreed to dismiss Mr. Jackson's two remaining counts.

In advance of sentencing, the United States Probation and Pretrial Services office prepared a Presentence Investigation Report (PSR). In describing the offense conduct, the PSR recounted that Jane Doe's mother and aunt contacted municipal police in July 2024 after finding information online and on Jane Doe's phone suggesting that she was being sex trafficked by Mr. Jackson and Ms. Holland. Police found Mr. Jackson and took him into custody on outstanding warrants.

A subsequent investigation revealed that Mr. Jackson worked as a sex trafficker for decades, having "pimped out" Ms. Holland—with whom he has two

2

children—alongside "[d]ozens and dozens" of other women. ROA Vol. II at 10; ROA Vol. III.A at 11. Investigators further learned—through recovered text messages, recorded video footage, Uber records, and electronic payment app records—that Mr. Jackson posted (or directed Ms. Holland to post) online advertisements for commercial sex from Jane Doe and/or Ms. Holland, that Jane Doe and Ms. Holland in fact attended at least two commercial sex dates together, and that the proceeds from one such transaction were immediately transferred to a CashApp account controlled by Mr. Jackson. Apart from Mr. Jackson occasionally pretending to be Jane Doe when texting with prospective commercial sex customers, Jane Doe related that she understood Mr. Jackson's role in the enterprise as keeping "her and [Ms.] Holland 'in check.'" ROA Vol. II at 11.

The PSR related information suggesting Mr. Jackson indeed kept them "in check." Interviews with Jane Doe, Ms. Holland, and others established that Mr. Jackson routinely employed or threatened violence to ensure compliance from Ms. Holland and others. Mr. Jackson's seventeen-year-old daughter reported that Mr. Jackson and Jane Doe were having sex, and his twelve-year-old son told investigators that he saw Mr. Jackson touch Jane Doe inappropriately. Mr. Jackson's son further told investigators that he had seen Mr. Jackson beat both Ms. Holland (his mother) and his sister, and that Mr. Jackson would give him a phone or tablet to occupy him while Mr. Jackson went into the bedroom with women.

As to criminal history, the PSR detailed Mr. Jackson's 2009 nolo contendere plea to California state charges for kidnapping and the sale of a person for immoral

3

purposes. But because that offense was too old to count for purposes of the Guidelines, he received no criminal history points for it and instead was assessed a single criminal history point for his 2017 Oklahoma conviction for possession of methamphetamine. *See* U.S.S.G. § 4A1.2(e)(1)–(3). That one criminal history point placed Mr. Jackson in criminal history category I, which, when combined with his total offense level of 27, yielded an advisory Guidelines sentencing range of 70 to 87 months' imprisonment.

Finally, the PSR advised the district court that it "may wish to consider the defendant's lengthy history of prostitution-related activities as well as his violent behavior as grounds for an upward variance," pointing to permissible sentencing factors under which the court might find a variance warranted: the history and characteristics of the defendant, deterrence, and the protection of public from further crimes committed by Mr. Jackson. ROA Vol. II at 34.

Both Mr. Jackson and the Government lodged objections to the PSR that are not relevant here, and the Government further moved for an upward departure or variance in advance of the sentencing hearing.

At the sentencing hearing, the court adopted the PSR's computation of Mr. Jackson's Guidelines range. Jane Doe's guardian ad litem then read her victim impact statement, in which Jane Doe described the immense harm she suffered and asked that the court impose "the maximum sentence so this does not happen to anyone else." ROA Vol. III.A at 37–38. Mr. Jackson advocated for a below-

4

Guidelines sentence of 60 months and the Government reiterated its justifications for an upward variance.

The district court prefaced its sentencing determination by observing that it found the "case very depressing." *Id.* at 43. Addressing Mr. Jackson, the court noted that the "life that you have led virtually your entire adult life and the people that you've abused and the laws that you've broken, it's just stunning to me." *Id.* "I think a substantial sentence is appropriate," the court continued, "primarily to protect the public because . . . I don't believe you're capable of not breaking the law and doing what you've done all these years." *Id.* "I think about you doing this with your children around with no conscience at all." *Id.* The court then varied upwards and imposed a 156-month term of imprisonment—"as punishment[,] as protection of society, for deterrent purposes." *Id.* "People have got to know you can't do something like this and get away with it." *Id.*

Mr. Jackson timely appealed[1] from the district court's entry of final judgment.

## II.    DISCUSSION

We review the reasonableness of sentencing decisions for abuse of discretion. *See United States v. Pena*, 963 F.3d 1016, 1024 (10th Cir. 2020). This standard applies "[r]egardless of whether the sentence imposed is inside or outside the

---

[1] Mr. Jackson waived his right to appeal his conviction or sentence under the plea agreement, but retained his "right to appeal the substantive reasonableness of [his] sentence" in the event the sentencing court imposed an above-Guidelines sentence. ROA Vol. I at 347. The plea agreement thus does not bar Mr. Jackson's challenge to the substantive reasonableness of his above-Guidelines sentence.

Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). And we "apply this standard with substantial deference to the district court." *United States v. Guevara-Lopez*, 147 F.4th 1174, 1184 (10th Cir. 2025) (internal quotation marks omitted).

In reviewing sentencing decisions for substantive reasonableness, we consider "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Williams*, 10 F.4th 965, 977 (10th Cir. 2021) (quotation marks omitted). We "do not reweigh the sentencing factors but instead ask whether the sentence fell within the range of rationally available choices that facts and the law at issue can fairly support." *United States v. Blair*, 933 F.3d 1271, 1274 (10th Cir. 2019) (internal quotation marks omitted). "Thus, as long as the balance struck by the district court among the factors set out in § 3553(a) is not arbitrary, capricious, or manifestly unreasonable, we must defer to that decision even if we would not have struck the same balance in the first instance." *United States v. Sells*, 541 F.3d 1227, 1239 (10th Cir. 2008).

When a district court "decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50. "A 'major' variance should have 'a more significant justification than a minor one.'" *United States v. Lente*, 759 F.3d 1149, 1158 (10th Cir. 2014) (quoting *Gall*, 552 U.S. at 50). However, while we may "take the degree of variance into account" in reviewing of the reasonableness of a sentence outside the Guidelines

6

range, we do not "use[] the percentage of a departure as the standard for determining the strength of the justifications required" or create a "presumption of unreasonableness for sentences outside the Guidelines range." *Gall*, 552 U.S. at 47. In fact, this court "uphold[s] even substantial variances when the district court properly weighs the § 3553(a) factors and offers valid reasons for the chosen sentence." *United States v. Gross*, 44 F.4th 1298, 1304 (10th Cir. 2022) (quotation marks omitted). "Still, we do not just provide a rubber stamp of approval and therefore must determine if the district court's proffered rationale, on aggregate, justifies the magnitude of the sentence." *United States v. Walker*, 74 F.4th 1163, 1202 (10th Cir. 2023) (internal quotation marks omitted).

Mr. Jackson advances three arguments that, he urges, establish that his carceral sentence[2] is substantively unreasonable. He first argues that the sentencing court improperly based its upward variance on considerations already embodied by the Guidelines range computed by the court. But we have held and continuously reiterated "that district courts have broad discretion to consider particular facts in fashioning a sentence, even when the Guideline-range sentence already accounts for those facts." *United States v. Zamora-Guerra*, 169 F.4th 1026, 1031 (10th Cir. 2026).

---

[2] Mr. Jackson repeatedly characterizes his 156-month sentence as "more than double" his Guidelines range. *See, e.g.*, Appellant's Br. at 12. But his Guidelines range extended up to 87 months, from which the district court varied upwards by 69 months, not "more than double" as he suggests. In any event, Supreme Court precedent dissuades reliance on "the percentage of the departure" as a starting point in the substantive reasonableness analysis. *Gall v. United States*, 552 U.S. 38, 47 (2007).

Next, Mr. Jackson raises the specter that his sentence was infected with racial bias, positing that "being a black male in a sex trafficking case all too easily can be misinterpreted into false narratives and disproportionate media coverage about the nature of sex trafficking and a specific archetype of a black male as a violent coercive pimp." Appellant's Br. at 16. These stereotypes, Mr. Jackson continues, led the district court to impose on him, a black male, "nearly ten more years of punishment" than his white, female co-conspirator, Ms. Holland.[3] *Id.* at 14–15.

Our review discloses no indication that the sentencing court improperly considered Mr. Jackson's race at sentencing. And Mr. Jackson—who for decades comported and referred to himself as a "pimp"—does not stand in the same shoes at sentencing as his comparator co-defendant, Ms. Holland—one of the victims of sex trafficking in Mr. Jackson's employ against whom he repeatedly inflicted or threatened violence.[4] ROA Vol. II at 12, 15.

Finally, Mr. Jackson faults the district court for not giving adequate weight to the facts that (1) he had been minimally incarcerated before his arrest in this case,

---

[3] Relatedly, Mr. Jackson laments the lack of accountability for the "white johns who bought and paid for sexual services" from Ms. Holland and Jane Doe. Appellant's Br. at 15. But Mr. Jackson was not arrested at the site of a commercial sex date where police let the johns walk free. In any event, we cannot see how the discretionary prosecutorial determinations of state and local law enforcement inform the question whether the district court's sentencing determination was borne of racial considerations, and Mr. Jackson makes no attempt to draw such a connection.

[4] Apart from this "history and characteristics" distinction between the co-defendants, Mr. Jackson's Guidelines range is necessarily higher than Ms. Holland's owing to his attempted obstruction of justice, which conduct gave rise to a two-point offense level increase. *See* ROA Vol. II at 20.

and (2) at forty-four years of age, statistics suggest he posed a lower risk of recidivism. With these arguments, Mr. Jackson asks that we reweigh the sentencing factors and reach a different balance than that rendered by the sentencing court, something we will not do in a substantive reasonableness appeal. *See United States v. Lawless*, 979 F.3d 849, 856 (10th Cir. 2020) (declining to reassess the importance placed by the district court on certain § 3553(a) factors "because reweighing the factors is beyond the ambit of our review"); *see also United States v. McCrary*, 43 F.4th 1239, 1250 (10th Cir. 2022) ("Although [appellant] disagrees with the district court's weighing of [the sentencing] factors, that is not sufficient to warrant relief from his sentence.").

### III.    CONCLUSION

For the reasons articulated, the district court's decision to vary upwards by 69 months was not substantively unreasonable, and we therefore AFFIRM Mr. Jackson's sentence.

Entered for the Court

Carolyn B. McHugh
Circuit Judge